———————o———————

No. 3724.

Court of Appeal, Parish of Orleans.

## PEOPLE'S HOMESTEAD ASSOCIATION, vs. JOHN C. STAUB, et. als.

1. When a building contract bond is given for the faithful performance of the contract and as security under the provisions of Act 180 of 1894 and the obligation is in favor of material men and subcontractors and owners, in a sum equal to the contract price, it is void as a statutory bond.

2. The elimination from the bond of the obligation not in accordance with law cannot affect or impair the other which is the law the parties have made for themselves, and the bond remains good as a conventional one between the principal and surety on the one hand and the owner on the other.

3. A surety is discharged when, by the act of the creditor, the subrogation of his rights, mortgages and privileges can no longer be operated in favor of the surety, and when part only of such rights, mortgages and privileges can no longer be so operated, the discharge is pro tanto only.

93

4. It is not firmly settled that the owner's claim for demurrage primes all others.

5. There is a passive violation of a contract when the party does not do what was covenanted to be done or does do it at the time or in the manner stipulated, or implied from the nature of the contract. In such case, it is necessary to put the debtor in default before damages can become due, unless the thing to be done was of such a nature that it could only be done within a certain time which has elapsed.

6. This rule obtains whether the damages be liquidated or not the liquidation in advance merely obviates necessity of proof as to the extent of the damage.

7. The prescription of Act 180 of 1894 is solely, as it states, "in favor of the bond and surety," and in no manner affects or refers to the liability of an owner who has failed to take the bond required of him by the statute.

The limitation is based on the presence and not the absence of a bond.

Appeal from Civil District Court, Division "C."

Foster, Milling, Godchaux & Sanders, for Defendant and Appellant.

Rice & Montgomery, for Plaintiff and Appellant.

Merrick & Lewis, Carroll & Carroll, McCloskey & Benedict, for Plaintiff and Appellee.

R. B. Montgomery, W. A. Bahns, Cage Baldwin & Crabites, Stafford & Lambert, Clegg & Quintero, H. G. Stewart, Lyle Saxon defendant and appellees.

DUFOUR, J. The plaintiff entered into a contract with John C. Staub to build a house for him for the sum of $6300, payable in five installments at the time and in the manner specified in such contract.

Three installments aggregating $3500 were paid, but previous to the maturity of the fourth, the owner, on the assumption that the contractor had violated his contract by failing to finish the work at the appointed time, completed the work and paid out the money necessary for that purpose.

He then filed a concursus, depositing $988.05 in Court and citing all parties in interest, claimed the first privilege on the amount in part payment of demurrage, and asked for judgment for the balance against the contractor and his surety.

The only appellants are the surety, and a material man, the Alfred Hiller Company.

The surety's present contention is:

First. That the bond is not good as a conventional bond because it was intended as a bond under the act of 1894.

Second. That the surety is discharged because the terms of the contract were modified without his consent.

Third. That the violation of the contract was passive and there was no putting in default until January 13, 1902, and demurrage only became due thereafter.

Fourth. That the estimate of demurrage is excessive, no allowance being made for rainy days and days on which no work was done on account of strikes.

The contract provides that should the contractor at any time during the progress of said work refuse or neglect to supply a sufficiency of material or of workmen, or cause any reasonable neglect or suspension of work or fail or refuse to comply with any part of the agreement, the owner or his agent shall have the right to take possession of the premises and may at once terminate the contract, after giving the contractor forty-eight hours notice in writing.

It is also stipulated that the work shall be finished and delivered previous to September 25, 1901, and liquidated damages would be due at the rate of $12.50 per day, for every day thereafter that the work shall remain incomplete.

The heading of the bond recites that it is "for the faithful performance of the within contract *and* as security under the provisions of Act 180 of 1894."

In the body of the bond the surety binds himself to the People's Homestead Association and all *other* persons who may have rights against the contracting parties, in a sum representing the full contract price. The obligation is to pay all material men, workmen, etc., and also to secure the owner against any failure on the part of the contractor to faithfully and properly carry out his contract. There can be no doubt that, under the ruling in Hughes, vs. Smith, recently re-iterated in Lhote Co. vs. Dugue and Levy, the bond is not good as a statutory one, because an amount equal

95

to the price is held insufficient to protect both the owner and the statutory beneficiaries, and in consequence all the stipulations in reference to the latter must be stricken from the instrument. The result is that the material men etc., have no direct action against the surety, and the owner remains personally liable. But we see no reason why the conventional part of the agreement should not remain in force between the parties thereto. The bond was unmistakably given for the purpose; the elimination of the purpose not in accordance with law cannot affect or impair the other which is the law the parties have made for themselves.

Moreover, the suety practically acknowledges the original existence of lawful obligation when he seeks his release therefrom on the grounds previously mentioned.

There is no merit in the claim that the surety was released because of alterations made in the contract and of extra work done. Generally speaking and with the exception of a few insignificant details, the extra work is not shown to have been done with the written consent of the Homestead Co. as required by section 6 of the contract, and it was in a measureable degree ordered and paid for by one Honor for whom the company was having the house built.

The same is true as to some of the alterations; and, as to others, it appears that they were made because Diboll, the supervising architect, did not consider the work properly done.

He was the arbiter under the contract and his decision must be final when it is not shown to have been unreasonable and arbitrary.

In relation to the claim of release because of anticipation of payment, we find in the record three written consents of the surety for the payment of sums aggregating $2300. With the exception of an anticipation of $125 overpaid to the contractor before the issuance of the third certificate and for which end it was given the suety in the judgment, it does not appear that he has suffered any loss or injury.

Our Code of Law, fortified by decisions enforcing it, is that the surety is discharged when by the act of the creditor, the subrogation to his rights, mortgages and privileges can no longer be

operated in favor of the surety, or when the creditor without the consent of the surety has granted a prolongation of the term to the principal debtor.

R. C. C. 3061, 3063-2 An. 429 An. 179-29 An 844-44 An. 260.

In this instance, the surety's right has not been impaired, as he has received a credit to the extent of the value of the anticipation.

Neither of the two cases cited as adverse to this view is applicable.

No. 6. R. 47, in which Court said that "the surety has the right to stand upon the very terms of his contract even if he should be benefited by the change," the point actually involved and decided was that the surety was released because, without his consent, a prolongation of the term had been granted to the principal debtor by the creditor.

In 113 La. 413, it is merely held that the surety was entitled to a strict compliance with the requirement of giving notice of the commencement of the work and was released by non-compliance therewith. The language used must be construed with reference to the particular facts of that case, in which no question of money or securities was presented, and we are unwilling to assume that it was the intention of the Court to overrule an established jurisprudence without mention of any of the cases which consecrates it.

Passing now to the question of the demurrage claimed by owner, it is firmly settled that he is entitled to demand it with a preference on the fund deposited over all sub-contractors, material, men, etc.

1 Court of Appeal 30.

But the time from which the demurrage shall be computed depends upon the determination of the question as to whether the contract was violated actively or passively.

There is a passive violation when the party does not do what was covenanted to be done or does not do it at the time, or in the manner stipulated or implied from the nature of the contract. In such case it is necessary to put the debtor in default before damages can become due, unless the thing to be done was of such a na-

ture, that it could only be done within a certain time which has elapsed.

R. C. C. 1931-1933-3, An. 445-4, An. 97-98, An. 788-11, An. 300-6, N. S. 624-10 R. 526.

In commenting on the amalogeous articles of the Code Napoleon Marcade says:

"C'est une erreur assey commune dans le monde que de croire qu un de-biteur est en demeure par cela seul que le terme convenu pour l'execution de son obligation expire saus qu'il l'execute· Dans les principes du code, contraires an droit romain sur a point, le debiteur en general n'est point en demeure, malgre l'echeance du terme, tant qu'une sommation or quel que acte equivalent n'est pas venu lin prouver que le creancier n'entend lin accorder ancun delai."

Marcade Vol. 4, p. 413.

Id. section 653, p. 502.

The contract herein, so far from stipulating that the party shall be in default by the mere failure to finish the work at the time specified, actually requires that a notice of forty eight hours shall be given to the contractor before the owner can take possession and terminate the contract.

The recorder does not justify the assertion that there was any acknowledged inability to perform which would make a putting in default unnecesssary, and the law is not, as contended, that the surety who has appealed is bound by the judgment against the contractor who has not appealed.

The notice was given on the 13th of January 1902 and it is admitted that it became effective on that day, and from this date until Febuary 17th 1902, a which time the house was finished by the Homestead Co., demurrage is due at the rate of $12.50 per day, for thirty five days.

The fact that the damages were liquidated in advance does not alter the legal status; the liquidation merely obviates necessity of proof as to the extent of the damage, and in case of a passive violation, a putting in default is an absolute prerequisite to the recovery of damages, whether liquidated or not.

The Hiller Co.'s claim for $642. cannot be allowed a prefer-

ence over the demurrage which is a matter entirely disconnected with the act of 1894.

It served no attested account on the owner, and the sole basis for its demand is a document signed by the contractor, presented by the Hiller Co. to the owner, and providing that one half of a claim of $642. should be paid out of the third instalment and the other half out of the fourth instalment. The first half was paid on December 7th 1901, and Staub never earned the fourth instalment.

Another bill for $275 was to be paid out of the fifth instalment, and still another order for $177 was not given until February 4th, 1902, after the termination of the contract.

But the Hiller Co. is entitled to a personal judgment against the owner, under the express terms of Act 180 of 1894 to the effect that should the owner fail to require from the contractor a good and solvent statutory bond, and he shall be personally liable for all balances due to the workmen and material men, and these shall have a privilege on the plot and buildings.

In the lower Court all parties and the judge himself proceeded on the interpretation of the decision in Leicherstad vs Feitel, and acted on the theory that the bond was good as a statuory one.

Thereafter, Hughes vs Smith was decided, and hence the issues in this Court have become different.

There can be no estoppel against any of the parties based on an error of law, and the cause must be dealt with here on the record as we find it, and on our conclusion that the law is not a statutory but merely a conventional one, protecting the owner alone.

To this claim the owner pleads the prescription of ninety days under the foregoing act, and, in support thereof cites the following language from McKnight vs Bank of Arcadia 38 L. R. 173.

"There is no evidence that the stone company served any attested account on the defendant, and if it ever had any claim against defendant, under Act 180 of 1894, for materials furnished to the contractor, its action thereon was barred prior to the filing

of the suit, by the lapse of 90 days from the completion of the building."

After an examination of the transcripts, briefs and opinion in that case and with due deference to the Supreme Court, we cannot consider the language quoted as authoritive, for several reasons.

1st. That no issue whatsoever was presented by the pleadings as to the bond under the Act of 1894 as amended by Act 123 of 1896, or as to any other bond.

2nd. No plea of prescription was filed and the Court was powerless to supply it.

3rd. That the only point at issue was whether or not the owner, on whom no attested account had been served and against whom no suit had been filed, had the right to withhold the money from the plaintiff.

4th. That we take judicial cognizance that Crowley, in the Parish of Arcadia, has less population than the minimun required by Act 123 of 1896, in order to come within the operation and scope of such legislation.

It is, therefore, clear that the language used was not and could not have been intended to be decisive.

It is our opinion that the prescription of the Act is solely, as it states, "in favor of the bond and surety" and, in no manner, affects or refers to the liability of an owner who has failed to take the bond required of him by the Statute.

The limitation is based on the *presence* and not the *absence* of a bond.

The plaintiff is entitled to reimbursement from the surety, but the pleadings do not permit a judgment to that end in these proceedings.

We have no concern with the claims of those who have not appealed, and we are powerless to alter the judgment as between appellees.

It is admitted in this Court, that Stewart's claim should be paid first.

The judgment is amended in the following particulars:

It is ordered, adjudged and decreed that after payment to Samuel B. Stewart as provided by the judgment below, the plain-

tiff in this suit shall receive the balance of the fund to be applied to a credit as hereinafter provided.

It is further ordered that there be judgment in favor of the Alfred Hiller Co., Ltd., and against the plaintiff, the People's Homestead Association, in the sum of $773.55 with legal interest from judicial demand until paid with privilege to secure same on the buildings and plot of ground described in plaintiff's petition, and all costs expended by said Hiller Co.

It is further ordered that there be judgment in favor of plaintiff and against Charles E. Staub, surety, in the sum of $437.50, instead of $1,625 allowed in the judgment below, with legal interest from judicial demand, subject to a credit of $125, and of $13.21 with legal interest from judicial demand, and subject to a further credit of such net amount as may be realized by the plaintiff out of the fund deposited, after the payment of plaintiff's costs herein.

It is further ordered that plaintiff's right to demand of Charles E. Staub, surety, reimbursement the amount decreed against it in favor of the Alfred Hiller Co., Ltd., be reserved.

It is further ordered that all other demands against said Charles E. Staub, surety, be dismissed, and that the judgment in all other respects be affirmed; plaintiff and appellee to pay costs of appeal.

Jan. 9, 1906.

## ON REHEARING.

The question of the unconstitutionality of a statute cannot be considered by Courts when not presented by the pleadings and merely urged in oral or written opinion.

DUFOUR, J. The application assails the correctness of all of the grounds on which our original decision was based; we have considered the same and adhere to our first opinion.

It is further urged that the Court erred in not holding that the Act No. 180 of 1894 is contrary to the 14th Article of amendment to the Constitution of the United States in that its effect and purport is to take petitioner's property without due process of law and to deny to petitioner the equal protection of the laws of Louisiana."

We did not pass, and shall not pass on the question of the un-constitutionality of the law, because it was not raised in the pleadings, but merely at the argument and in the briefs.

Rehearing refused.

Feb. 5, 1906.

Writ refused March 15, 1906.